# EXHIBIT 3



**Declarations**

## Policy No. ZPL-71N49757-22-I3

This Policy consists of this Declarations and one or more Coverage Declarations and Coverage forms. It may also include one or more Common Conditions or endorsements. In consideration of the premium, the Insurer provides this Policy, which is the entire agreement between the Insurer and the Insured.

**Insurer**
Throughout this Policy, Insurer means **Travelers Property Casualty Company of America**, which is a capital stock company located in Hartford, Connecticut.

**Named Insured**
Throughout this Policy, Named Insured means:
INTERNATIONAL CONTROL SERVICES INC

**Principal Address**
606 W IMBODEN DR
DECATUR IL 62521

**Policy Period**
Inception:      April 04, 2022
Expiration:     April 04, 2023
12:01 A.M. local time both dates at Principal Address.

**Policy Premium**
$22,193.00

**Notices To The Insurer**
Travelers Insurance
Attn: Business Torts Claims, SB03T
385 Washington St
St Paul MN 55102
firstreport@travelers.com
www.travelers.com
Claim telephone: 1-800-238-6225

**Producer Information**
A J GALLAGHER RMS
P.O. BOX 140
DECATUR IL 62525

Authorized officers of the Insurer:

*President*

*Secretary*

Countersigned By

Forms attached at issuance:

| Form Number | Form Title |
|---|---|
| ILT801 Ed. 10-93 | Forms, Endorsements And Schedule Numbers<br>(Note: This contains all forms attached at issuance.) |



# LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

This listing shows the number of forms, schedules and endorsements by line of business.

| | | | | | |
|---|---|---|---|---|---|
| AF E1 | 50 | 01 | 06 | 20 | DECLARATIONS |
| IL T8 | 01 | 10 | 93 | | FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS |
| AF E1 | 90 | 30 | 09 | 20 | FEDERAL TERRORISM RISK INSURANCE ACT DISCLOSURE ENDORSEMENT |
| AF E1 | 90 | 29 | 07 | 19 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT |

PROFESSIONAL

| | | | | | |
|---|---|---|---|---|---|
| CY B1 | 50 | 01 | T | 06 | CYBERRISK DECLARATIONS |
| CY B1 | 60 | 02 | T | 06 | CYBERRISK TECH COVERAGE TABLE OF CONTENTS |
| CY B1 | 60 | 02 | 06 | 20 | CYBERRISK TECH COVERAGE |
| AF E1 | 60 | 01 | 01 | 19 | GENERAL CONDITIONS |
| AF E1 | 70 | 04 | 08 | 21 | ILLINOIS CHANGES ENDORSEMENT |
| CY B1 | 91 | 02 | 06 | 20 | DEPENDENT BUSINESS INTERRUPTION – SYSTEM FAILURE ENDORSEMENT |
| CY B1 | 91 | 22 | 05 | 19 | VENDOR OR CLIENT PAYMENT FRAUD ENDORSEMENT |
| CY B1 | 91 | 23 | 05 | 19 | BRICKED EQUIPMENT ENDORSEMENT |
| CY B1 | 91 | 24 | 09 | 19 | EXCLUDE VIOLATIONS OF THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT |
| CY B1 | 91 | 38 | 06 | 20 | FIRST PARTY INSURING AGREEMENTS AGGREGATE LIMIT ENDORSEMENT |
| CY B1 | 91 | 49 | 06 | 20 | EXCLUDE MENTAL ANGUISH ENDORSEMENT |
| CY B1 | 91 | 51 | 06 | 20 | EXCLUDE JOINT VENTURES AND LLPS ENDORSEMENT |

TRAVELERS DOC MGMT Page 3 of 48

TRAVELERS DOC MGMT Page 4 of 48

This notice provides no coverage, nor does it change any policy terms. To determine the scope of coverage and the insured's rights and duties under the policy, read the entire policy carefully. For more information about the content of this notice, the insured should contact their agent or broker. If there is any conflict between the policy and this notice, the terms of the policy prevail.

**Independent Agent And Broker Compensation Notice**

For information on how Travelers compensates independent agents, brokers, or other insurance producers, please visit this website: www.travelers.com/w3c/legal/Producer__Compensation__Disclosure.html.

Or write or call:

**Travelers, Agency Compensation**
**One Tower Square**
**Hartford, Connecticut 06183**

**(866) 904.8348**

© 2019 The Travelers Indemnity Company. All rights reserved.

This endorsement modifies any Coverage Part or Coverage Form included in this Policy that is subject to the federal Terrorism Risk Insurance Act of 2002 as amended.

**Federal Terrorism Risk Insurance Act Disclosure Endorsement**

The federal Terrorism Risk Insurance Act of 2002 as amended ("TRIA"), establishes a program under which the Federal Government may partially reimburse "Insured Losses" (as defined in TRIA) caused by "Acts Of Terrorism" (as defined in TRIA). Act Of Terrorism is defined in Section 102(1) of TRIA to mean any act that is certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The Federal Government's share of compensation for such Insured Losses is 80% of the amount of such Insured Losses in excess of each Insurer's "Insurer Deductible" (as defined in TRIA), subject to the "Program Trigger" (as defined in TRIA).

In no event, however, will the Federal Government be required to pay any portion of the amount of such Insured Losses occurring in a calendar year that in the aggregate exceeds $100 billion, nor will any Insurer be required to pay any portion of such amount provided that such Insurer has met its Insurer Deductible. Therefore, if such Insured Losses occurring in a calendar year exceed $100 billion in the aggregate, the amount of any payments by the Federal Government and any coverage provided by this policy for losses caused by Acts Of Terrorism may be reduced.

For each coverage provided by this policy that applies to such Insured Losses, the charge for such Insured Losses is no more than one percent of your premium, and does not include any charge for the portion of such Insured Losses covered by the Federal Government under TRIA. Please note that no separate additional premium charge has been made for coverage for Insured Losses covered by TRIA. The premium charge that is allocable to such coverage is inseparable from and imbedded in your overall premium.

Issuing Company:  TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Policy Number:  ZPL-71N49757-22-I3

© 2020 The Travelers Indemnity Company. All rights reserved.

This endorsement modifies any Coverage Part or Coverage Form included in this Policy that is subject to the federal Terrorism Risk Insurance Act of 2002 as amended.

**Cap On Losses From Certified Acts Of Terrorism Endorsement**

The following is added to this Policy. This provision can limit coverage for any loss arising out of a *Certified Act Of Terrorism* if such loss is otherwise covered by this Policy. This provision does not apply if and to the extent that coverage for the loss is excluded or limited by an exclusion or other coverage limitation for losses arising out of *Certified Acts Of Terrorism* in another endorsement to this policy.

If aggregate insured losses attributable to *Certified Acts Of Terrorism* exceed $100 billion in a calendar year and the Insurer has met its insurer deductible under *TRIA*, the Insurer will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

*Certified Act Of Terrorism* means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of *TRIA*, to be an act of terrorism pursuant to *TRIA*. The criteria contained in *TRIA* for a *Certified Act Of Terrorism* include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

*TRIA* means the federal Terrorism Risk Insurance Act of 2002 as amended.

Issuing Company:  TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Policy Number:  ZPL-71N49757-22-I3

AFE-19029 Rev. 07-19
© 2019 The Travelers Indemnity Company. All rights reserved.

This notice provides no coverage, nor does it change any policy terms. To determine the scope of coverage and the insured's rights and duties under the policy, read the entire policy carefully. For more information about the content of this notice, the insured should contact their agent or broker. If there is any conflict between the policy and this notice, the terms of the policy prevail.

**Illinois Religious Freedom Protection And Civil Union Act Notice**

The Illinois Religious Freedom Protection and Civil Union Act provides that persons of the same or opposite sex who enter into a civil union must be afforded the same obligations, protections, and legal rights as married persons. This law became effective June 1, 2011, and is designed to ensure that civil unions and marriage are treated identically under Illinois law. In accordance with law, this policy will be interpreted to provide the same benefits and protections to persons in a civil union or in a marriage.

© 2019 The Travelers Indemnity Company. All rights reserved.

**Claims-Made:** The Liability Insuring Agreements are provided on a Claims-Made basis, and cover only *Claims* first made during the *Policy Period*, or any applicable extended reporting period. Please read the Policy.

**Defense Within Limits:** The Limit available to pay settlements or judgments will be reduced, and may be completely exhausted, by *Defense Costs*, and any retention will be applied against *Defense Costs*.

A limit left blank for a coverage means that such coverage is not included. An entry for any other provision left blank means that such provision does not apply.

The Insurer has the duty to defend *Claims*.

**CyberRisk Aggregate Limit:** $1,000,000

| Liability | Limit | Retention |
|---|---|---|
| Privacy and Security | $1,000,000 | $50,000 |
| Payment Card Costs | | Subject to Privacy And Security Retention |
| Media | | |
| Technology Errors And Omissions | $1,000,000 | $50,000 |
| Regulatory Proceedings | $500,000 | $50,000 |

| Breach Response | Limit | Retention |
|---|---|---|
| Privacy Breach Notification | $500,000 | $50,000 |
| Computer and Legal Experts | $500,000 | $50,000 |
| Betterment | $100,000 | |
| Cyber Extortion | $500,000 | $50,000 |
| Data Restoration | $500,000 | $50,000 |
| Public Relations | $500,000 | $50,000 |

| Cyber Crime | Limit | Retention |
|---|---|---|
| Computer Fraud | $100,000 | $25,000 |
| Funds Transfer Fraud | $100,000 | $25,000 |
| Social Engineering Fraud | $100,000 | $25,000 |
| Telecom Fraud | $100,000 | $25,000 |

| Business Loss | Limit | Retention |
|---|---|---|
| Business Interruption | $500,000 | |
| Dependent Business Interruption | $500,000 | |
| Dependent Business Interruption – System Failure | $500,000 | |
| Dependent Business Interruption – Outsource Provider | | |
| Dependent Business Interruption – Outsource Provider – System Failure | | |
| Reputation Harm | $100,000 | $25,000 |

© 2020 The Travelers Indemnity Company. All rights reserved.

System Failure          $500,000

**Additional First Party Provisions**

Accounting Costs Limit:

Betterment Coparticipation: 50%

Period Of Restoration: 180 days

Period Of Indemnity: 30 days

Wait Period: 12 hours

Business Loss Retention:

Emergency Costs Limit:

**Knowledge Date:** April 04 2022

**P&P Date:**

**Retro Date:** April 04 2014

**Extended Reporting Period**

Months         Percentage of Annualized Premium
                    %

© 2020 The Travelers Indemnity Company. All rights reserved.

## Contents

**Liability Insuring Agreements**.............................1
Privacy And Security.....................................1
Media.....................................................1
Technology Errors And Omissions..................1
Regulatory Proceedings...............................1

**Breach Response Insuring Agreements** ...........1
Privacy Breach Notification..........................1
Computer And Legal Experts.......................1
Betterment...............................................1
Cyber Extortion.........................................1
Data Restoration.......................................1
Public Relations........................................1

**Cyber Crime Insuring Agreements** ..................1
Computer Fraud.........................................1
Funds Transfer Fraud.................................2
Social Engineering Fraud............................2
Telecom Fraud..........................................2

**Business Loss Insuring Agreements** ...............2
Business Interruption..................................2
Dependent Business Interruption..................2
Reputation Harm.......................................2

**Definitions**...................................................2
Accounting Costs.......................................2
Additional Insured.....................................2
Adverse Media Report................................2
Approved Provider.....................................2
Automatic ERP.........................................2
Betterment Costs.......................................2
Business Interruption Loss...........................3
Change Of Control.....................................3
Claim.....................................................3
Client.....................................................3
Computer And Legal Expert Costs.................3
Computer Fraud.........................................4
Computer System.......................................4
Confidential Information..............................4
Covered Material.......................................4
Cyber Extortion Costs.................................4
Cyber Extortion Threat................................4
Defense Costs...........................................4
Discover, Discovered, Discovery....................5
Employee.................................................5
Executive Officer.......................................5
Extra Expense...........................................5
First Party Event........................................5
First Party Insuring Agreements....................6
First Party Loss.........................................6
Funds Transfer Fraud.................................6
Impacted Parties.......................................6
Income Loss.............................................6
Independent Contractor..............................7
Insured...................................................7

Insured Entity...........................................7
Insured Person.........................................7
IT Provider..............................................7
IT Provider Breach.....................................7
Loss......................................................7
Media Act................................................8
Merchant Service Agreement.......................8
Money....................................................8
Notification..............................................8
Optional ERP...........................................8
Other Property..........................................9
Payment Card Contract Penalties..................9
Payment Card Security Standards..................9
Period Of Indemnity...................................9
Period Of Restoration.................................9
Policy Period............................................9
Pollutant.................................................9
Potential Claim.........................................9
Privacy And Security Act.............................9
Privacy Breach..........................................9
Privacy Breach Notification Costs...................9
Privacy Policy...........................................10
Public Relations Costs................................10
Ransom..................................................10
Regulatory Costs.......................................10
Regulatory Proceeding................................10
Reputation Harm.......................................10
Restoration Costs......................................10
Run-Off Period..........................................10
Securities................................................10
Security Breach.........................................10
Social Engineering Fraud.............................11
Subsidiary...............................................11
System Failure..........................................11
Technology Act.........................................11
Technology Products..................................11
Technology Services...................................11
Telecom Charges.......................................11
Telecom Fraud..........................................11
Vendor...................................................11
Virtual Currency........................................11
Virus.....................................................12
Wait Period.............................................12
Wrongful Act............................................12

**Exclusions**...................................................12
Assumed Liability......................................12
Bodily Injury............................................12
Conduct..................................................12
Cost Guarantees Or Estimates......................13
Costs To Comply With Warranties Or
For Recall, Removal, Or Withdrawal..............13
Cyber Crime.............................................13

© 2020 The Travelers Indemnity Company. All rights reserved.

Employee Benefit Plans. .......................................... 13
Employment Practices Claims .............................. 14
Government Action. .................................................. 14
Government Demands. ............................................. 14
Infrastructure. ............................................................. 14
Insured vs. Insured. ................................................... 14
Intellectual Property. ................................................ 14
Labor Disputes. .......................................................... 15
Licensing And Royalties. ........................................ 15
Ownership Rights. ..................................................... 15
Personal Injury. .......................................................... 15
Physical Peril. .............................................................. 15
Pollution. ...................................................................... 15
Prior Acts. ..................................................................... 15
Prior Matters. .............................................................. 15
Professional Services. ............................................. 16
Property Damage. ...................................................... 16
Securities Laws. ......................................................... 16
Unlawful Collection. ................................................. 16
Unsolicited Communications. .............................. 16
Violation Of Consumer Protection Laws. ...... 16
War. ................................................................................. 17

**Limits And Retentions** ............................................ **17**
Limits Of Insurance. ................................................. 17
Retention. ..................................................................... 17

**Other Conditions** ...................................................... **18**
Allocation. .................................................................... 18
Cancelation And Nonrenewal. ............................. 18
Change Of Structure. ............................................... 18
Claim Defense. ........................................................... 18
Cyber Crime And Business Loss
    Change. .................................................................... 19
ERP — Automatic. ...................................................... 19
ERP — Optional. ......................................................... 19
Extended Discovery Period. .................................. 19
Income Loss Appraisal. ........................................... 20
Notice Of Claim. ........................................................ 20
Notice Of First Party Event. ................................. 20
Other Insurance. ........................................................ 20
Property Covered. ..................................................... 20
Recovery And Subrogation. .................................. 20
Related Claims. ........................................................... 21
Representations. ........................................................ 21
Settlement. .................................................................. 21
Subsidiaries. ................................................................ 21
Suits Against The Insurer —
    Cyber Crime. ......................................................... 21
Valuation Under First Party Insuring
    Agreements. ........................................................... 22


Only the Insuring Agreements with Limits shown in the CyberRisk Declarations apply.

## Liability Insuring Agreements

**Privacy And Security.** The Insurer will pay *Loss* on behalf of the *Insured*, resulting from a *Claim* that is first made during the *Policy Period*, or any applicable extended reporting period, for a *Privacy And Security Act*.

**Media.** The Insurer will pay *Loss* on behalf of the *Insured*, resulting from a *Claim* that is first made during the *Policy Period*, or any applicable extended reporting period, for a *Media Act*.

**Technology Errors And Omissions.** The Insurer will pay *Loss* on behalf of the *Insured*, resulting from a *Claim* that is first made during the *Policy Period*, or any applicable extended reporting period, for a *Technology Act*.

**Regulatory Proceedings.** The Insurer will pay *Defense Costs* and *Regulatory Costs* on behalf of the *Insured*, resulting from a *Regulatory Proceeding* that is first commenced during the *Policy Period*, or any applicable extended reporting period, for a *Privacy And Security Act* or *Media Act*.

## Breach Response Insuring Agreements

**Privacy Breach Notification.** The Insurer will reimburse, or pay on behalf of, the *Insured* for *Privacy Breach Notification Costs* resulting from an actual or suspected *Privacy Breach* that is *Discovered* during the *Policy Period*, or any extended discovery period.

**Computer And Legal Experts.** The Insurer will reimburse, or pay on behalf of, the *Insured* for *Computer And Legal Expert Costs* resulting from an actual or suspected:
1. *Privacy Breach;*
2. *Security Breach;* or
3. *Cyber Extortion Threat,*

that is *Discovered* during the *Policy Period*, or any extended discovery period.

**Betterment.** The Insurer will reimburse the *Insured* for *Betterment Costs*, following a *Security Breach* that is *Discovered* during the *Policy Period*.

**Cyber Extortion.** The Insurer will reimburse, or pay on behalf of, the *Insured* for *Cyber Extortion Costs*, resulting from a *Cyber Extortion Threat* that is *Discovered* during the *Policy Period*.

**Data Restoration.** The Insurer will reimburse, or pay on behalf of, the *Insured* for *Restoration Costs*, directly caused by a *Security Breach* that is *Discovered* during the *Policy Period*.

**Public Relations.** The Insurer will reimburse, or pay on behalf of, the *Insured* for *Public Relations Costs*, resulting from an actual or suspected:
1. *Privacy And Security Act;*
2. *Technology Act;* or
3. *Media Act,*

that is *Discovered* during the *Policy Period*, or any extended discovery period.

## Cyber Crime Insuring Agreements

**Computer Fraud.** The Insurer will pay the *Insured Entity* for its direct loss of *Money, Securities,* or *Other Property*, directly caused by *Computer Fraud* that is *Discovered* during the *Policy Period*.

© 2020 The Travelers Indemnity Company. All rights reserved.

**Funds Transfer Fraud.** The Insurer will pay the *Insured Entity* for its direct loss of *Money* or *Securities*, directly caused by *Funds Transfer Fraud* that is *Discovered* during the *Policy Period*.

**Social Engineering Fraud.** The Insurer will pay the *Insured Entity* for its direct loss of *Money* or *Securities*, directly caused by *Social Engineering Fraud* that is *Discovered* during the *Policy Period*.

**Telecom Fraud.** The Insurer will pay the *Insured Entity* for its *Telecom Charges*, directly caused by *Telecom Fraud* that is *Discovered* during the *Policy Period*.

## Business Loss Insuring Agreements

**Business Interruption.** The Insurer will pay the *Insured* for its *Business Interruption Loss* that is directly caused by any of the following, if *Discovered* during the *Policy Period*:
1. A *Security Breach* that results in a total or partial interruption of a *Computer System*.
2. A *System Failure*, if applicable.
3. The voluntary shutdown of a *Computer System* by the *Insured*, if it is reasonably necessary to minimize the *Loss* caused by a *Security Breach* or *Privacy Breach* in progress.

**Dependent Business Interruption.** The Insurer will pay the *Insured* for its *Business Interruption Loss*, directly caused by an *IT Provider Breach* that is *Discovered* during the *Policy Period*.

**Reputation Harm.** The Insurer will pay the *Insured* for its *Reputation Harm*, directly caused by an *Adverse Media Report* or *Notification* that
1. first occurs during, or within 60 days after, the *Policy Period*; and
2. directly relates to a *Privacy Breach* or *Security Breach* that is *Discovered* during the *Policy Period*.

## Definitions

**Accounting Costs.** Means the reasonable fees or costs of a forensic accounting firm, incurred by the *Insured Entity*, to calculate *Income Loss*, even if such calculation shows there has been no *Income Loss*.

**Additional Insured.** Means a person or entity, not otherwise an *Insured*, with whom the *Insured Entity* has entered into a written agreement to include as an *Insured*, but only for *Wrongful Acts*.
1. by, or on behalf of, the *Insured Entity* under such agreement; and
2. that occur after the *Insured Entity* has executed such agreement.

**Adverse Media Report.** Means any communication of an actual or potential *Privacy Breach* or *Security Breach* by a media outlet. Multiple *Adverse Media Reports* regarding the same *Privacy Breach* or *Security Breach* are deemed one *Adverse Media Report*.

**Approved Provider.** Means a service provider approved by the Insurer in writing to the *Insured*.

**Automatic ERP.** Means a 90-day extended reporting period starting on the effective date this Coverage is canceled or not renewed.

**Betterment Costs.** 1. Means the reasonable costs incurred and paid by the *Insured*, with the Insurer's written consent, for hardware or software to improve a *Computer System* after a *Security Breach*, if:
   a. the *Security Breach* has been stopped or contained, and resulted in covered *Computer And Legal Expert Costs*;
   b. the *Approved Provider* that provided computer services in response to such *Security Breach*.

© 2020 The Travelers Indemnity Company. All rights reserved.

       i. has identified a weakness in a *Computer System* that caused, or contributed to, the *Security Breach*; and

       ii. recommends the improvements to prevent a future *Security Breach* from exploiting such weakness; and

   c. such improvements are incurred and paid for by the *Insured* within the earlier of 90 days after:

       i. the recommendation by the *Approved Provider*; or

       ii. the end of the *Policy Period*.

Costs for improvements that are subject to a license, lease, or subscription will be limited to the pro rata portion of such costs for the first 12 months.

2. Does not include wages, benefits, or overhead of any *Insured*.

**Business Interruption Loss.**
1. Means:
   a. *Income Loss* and *Extra Expense* incurred or paid by the *Insured Entity* during the *Period Of Restoration*; and
   b. *Accounting Costs*, if the *Insured Entity's* business operations are interrupted beyond the *Wait Period*.
2. Does not include loss arising out of harm to the *Insured Entity's* reputation.

**Change Of Control.** Means when:
1. more than 50% of the Named Insured's assets are acquired; or
2. the Named Insured is merged with, or consolidated into, another entity, and the Named Insured is not the surviving entity.

**Claim.** Means:
1. a written demand for monetary or nonmonetary relief, including injunctive relief, commenced by an *Insured's* receipt of such written demand;
2. a civil proceeding, commenced by the service of a complaint or similar pleading;
3. an arbitration, mediation, or similar alternative dispute resolution proceeding, commenced by the service of an arbitration petition or similar legal document;
4. a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding, commenced by an *Insured's* receipt of such written request; or
5. for the Regulatory Proceedings Insuring Agreement only, a *Regulatory Proceeding*, commenced by:
   a. the filing of charges;
   b. the filing of an investigative order;
   c. the service of a summons; or
   d. the service or filing of a similar document,

against an *Insured* for a *Wrongful Act*. Except under Other Conditions, Notice Of Claim, a *Claim* is deemed made when commenced.

**Client.** Means a person or entity to whom the *Insured Entity*:
1. provides goods; or
2. performs services,

for a fee, or under a written agreement.

**Computer And Legal Expert Costs.**
1. Means the reasonable fees or costs incurred or paid by the *Insured* for services recommended and provided by an *Approved Provider*, to:
   a. conduct a forensic analysis to determine the existence and cause of a *Privacy Breach*, *Security Breach*, or *Cyber Extortion Threat*;
   b. determine whose *Confidential Information* was lost or stolen; or accessed or disclosed without authorization;

© 2020 The Travelers Indemnity Company. All rights reserved.

    c.  contain or stop a *Privacy Breach* or *Security Breach* in progress;

    d.  certify the *Computer System* meets *Payment Card Security Standards,* if a *Security Breach Discovered* during the *Policy Period* results in noncompliance with such standards, but only for the first certification; or

    e.  provide legal services to respond to a *Privacy Breach* or *Security Breach.*

2.  Does not include *Defense Costs* or *Privacy Breach Notification Costs.*

**Computer Fraud.**
1.  Means an intentional, unauthorized, and fraudulent entry or change of data or computer instructions, directly into or within, a *Computer System,* that:

    a.  is not made by an *Insured Person,* an *Independent Contractor,* or any other person under the direct supervision of the *Insured;* and

    b.  causes *Money, Securities,* or *Other Property* to be transferred, paid, or delivered from inside the *Insured Entity's* premises or the *Insured Entity's* financial institution premises to a place outside of such premises.

2.  Does not include *Social Engineering Fraud.*

**Computer System.** Means a computer and connected input, output, processing, storage, or communication device, or related network, operating system, website, or application software, that is:

1.  under the operational control of, and owned by, licensed to, or leased to:

    a.  the *Insured Entity;* or

    b.  an *Insured Person,* while authorized by, and transacting business on behalf of, the *Insured Entity,* except under the Betterment or Data Restoration Insuring Agreements, or any Cyber Crime Insuring Agreement; or

2.  operated by an *IT Provider,* but only the portion of such computer system used to provide hosted computer resources to the *Insured Entity,* except under the Betterment or Business Interruption Insuring Agreements.

**Confidential Information.** Means a third party's or *Insured Person's* private or confidential information that is in the care, custody, or control of the *Insured Entity,* or a service provider acting on behalf of the *Insured Entity.*

**Covered Material.**
1.  Means content that is created or disseminated, via any form or expression, by, or on behalf of, the *Insured Entity.*

2.  Does not include:

    a.  tangible product designs; or

    b.  content created or disseminated by the *Insured Entity* on behalf of a third party.

**Cyber Extortion Costs.**
1.  Means, with the Insurer's prior written consent:

    a.  *Ransom,* in direct response to a *Cyber Extortion Threat;*

    b.  reasonable amounts incurred or paid by the *Insured* in the process of paying, or attempting to pay, *Ransom;* or

    c.  reasonable amounts incurred or paid by the *Insured,* recommended by an *Approved Provider,* to mitigate *Ransom.*

2.  Does not include *Computer And Legal Expert Costs* or *Restoration Costs.*

**Cyber Extortion Threat.** Means a threat to:

1.  access or disclose:

    a.  *Confidential Information;* or

    b.  an *Insured Entity's* information without authorization; or

2.  commit or continue a *Security Breach,*

made against the *Insured Entity* for *Ransom.*

© 2020 The Travelers Indemnity Company. All rights reserved.

**Defense Costs.**
1. Means reasonable fees and costs incurred by the Insurer, or the *Insured* with the Insurer's prior written consent, in the:
   a. investigation;
   b. defense;
   c. settlement; or
   d. appeal,
   of a *Claim*.
2. Includes up to $1,000 per day for loss of earnings due to an *Insured Person's* attendance in court, if at the Insurer's request.
3. Does not include wages, benefits, or overhead of the Insurer or of the *Insured*.

**Discover, Discovered, Discovery.** Means when an *Executive Officer* first becomes aware of facts that would cause a reasonable person to assume that a *First Party Loss* has been or will be incurred, regardless of when the act or acts causing or contributing to such *First Party Loss* occurred, even though the exact amount or details of such *First Party Loss* may not then be known.

**Employee.**
1. Means a natural person while their labor is engaged and directed by the *Insured Entity*, and who is:
   a. a full-time, part-time, seasonal, or temporary worker compensated directly by the *Insured Entity* through wages, salaries, or commissions;
   b. a volunteer, student, or intern; or
   c. a worker whose services have been leased to the *Insured Entity* by a labor leasing firm under a written agreement.
2. Does not include any:
   a. agent;
   b. broker;
   c. consignee;
   d. independent contractor; or
   e. representative,
   of the *Insured Entity*.

**Executive Officer.** Means a natural person while acting as the *Insured Entity's*:
1. chief executive officer;
2. chief financial officer;
3. chief information security officer;
4. risk manager;
5. in-house general counsel; or
6. the functional equivalent of 1 through 5.

**Extra Expense.** Means reasonable costs incurred by the *Insured Entity*, with the Insurer's written consent, that:
1. result from a *First Party Event*;
2. are in excess of the *Insured Entity's* normal operating costs;
3. are intended to reduce *Income Loss*; and
4. would not have been incurred had there been no *First Party Event*.

**First Party Event.**
1. Means:
   a. *Computer Fraud;*
   b. *Cyber Extortion Threat;*
   c. *Funds Transfer Fraud;*
   d. *IT Provider Breach;*
   e. *Media Act;*

© 2020 The Travelers Indemnity Company. All rights reserved.

      f. *Privacy Breach;*
      g. *Security Breach;*
      h. *Social Engineering Fraud;*
      i. *System Failure;* or
      j. *Telecom Fraud.*

2. *First Party Events* that have a common:
      a. nexus;
      b. set of facts;
      c. circumstance;
      d. situation;
      e. event; or
      f. decision,
    are deemed a single *First Party Event.*

**First Party Insuring Agreements.** Means the:
1. Breach Response Insuring Agreements;
2. Business Loss Insuring Agreements; and
3. Cyber Crime Insuring Agreements.

**First Party Loss.** 1. Means:
      a. *Betterment Costs;*
      b. *Business Interruption Loss;*
      c. *Computer And Legal Expert Costs;*
      d. *Cyber Extortion Costs;*
      e. *Money;*
      f. *Other Property;*
      g. *Privacy Breach Notification Costs;*
      h. *Public Relations Costs;*
      i. *Reputation Harm;*
      j. *Restoration Costs;*
      k. *Securities;* or
      l. *Telecom Charges.*

2. Other than *Accounting Costs,* does not include amounts:
      a. to establish *First Party Loss;* or
      b. to prepare the *Insured Entity's* Proof of Loss.

**Funds Transfer Fraud.** 1. Means a fraudulent instruction that:
      a. is electronically sent to a financial institution that is not an *Insured,* at which the *Insured Entity* maintains an account;
      b. directs the transfer, payment, or delivery of *Money* or *Securities* from the *Insured Entity's* account;
      c. is purportedly sent by the *Insured Entity;*
      d. is sent by someone, other than an *Insured;* and
      e. is sent without the *Insured Entity's* knowledge or consent.

2. Does not include *Social Engineering Fraud.*

**Impacted Parties.** Means the persons or entities whose *Confidential Information* was, or is suspected to have been, stolen or lost, or accessed or disclosed without authorization.

---

© 2020 The Travelers Indemnity Company. All rights reserved.

**Income Loss.**
1. Means pretax net profit the *Insured Entity* did not earn, and net loss the *Insured Entity* incurred, because of a *First Party Event*. Continuing normal and necessary operating expenses and payroll are part of the pretax net profit or net loss calculation.
2. Does not include:
   a. *Extra Expense*;
   b. contractual penalties;
   c. costs incurred to replace or improve a *Computer System* to a level of functionality beyond what existed prior to the *First Party Event*;
   d. costs incurred to identify or remediate computer system errors or vulnerabilities;
   e. interest or investment income; or
   f. loss incurred due to unfavorable business conditions not related to the *First Party Event*.

**Independent Contractor.** Means a natural person, other than an *Employee*, while performing services for the *Insured Entity* under a written agreement.

**Insured.** Means:
1. *Insured Persons*;
2. *Insured Entities*; or
3. for the Liability Insuring Agreements only, also includes *Additional Insureds*.

**Insured Entity.** Means:
1. the Named Insured; or
2. *Subsidiaries*.

**Insured Person.** Means:
1. *Employees*;
2. natural persons while:
   a. officers;
   b. partners;
   c. the sole proprietor;
   d. in-house general counsel; or
   e. members of a board of directors, trustees, or governors,
   of the *Insured Entity*; or
3. for the Liability Insuring Agreements only, also includes *Independent Contractors*.

**IT Provider.** Means an entity while under a written agreement with the *Insured Entity* to provide it with:
1. hosted computer application services;
2. cloud services or computing;
3. electronic data hosting, back-up, storage, and processing;
4. co-location services;
5. platform-as-a-service; or
6. software-as-a-service.

**IT Provider Breach.** Means:
1. unauthorized access to;
2. use of authorized access to cause intentional harm to;
3. a denial-of-service attack against; or
4. the introduction of a *Virus* into,
an *IT Provider's* computer system, resulting in total or partial interruption.

© 2020 The Travelers Indemnity Company. All rights reserved.

*Loss.* 1. Means:
    a. *Defense Costs;*
    b. damages, judgments, settlements, or prejudgment or postjudgment interest, that an *Insured* is legally obligated to pay as a result of a *Claim,* including:
        i. court awarded legal fees; and
        ii. punitive or exemplary damages, or the multiple portion of a multiplied damage award, to the extent insurable under the most favorable applicable law;
    c. *Payment Card Contract Penalties;*
    d. for the Regulatory Proceedings Insuring Agreement, means *Regulatory Costs;* or
    e. for *First Party Insuring Agreements,* means *First Party Loss.*

2. *Loss* does not include voluntary payments made by the *Insured* with respect to a *Claim.*

3. *Loss,* other than *Defense Costs,* does not include:
    a. civil or criminal fines, penalties, sanctions, or taxes, except for:
        i. *Payment Card Contract Penalties;*
        ii. *Regulatory Costs;* or
        iii. amounts assessed against a *Client* resulting from a *Technology Act;*
    b. amounts uninsurable under applicable law;
    c. restitution, return, or disgorgement of any profits;
    d. liquidated damages in excess of the amount for which the *Insured* would be liable absent the liquidated damages provision of a contract;
    e. the cost of complying with injunctive or nonmonetary relief;
    f. price, product, or service credits;
    g. amounts awarded under a prevailing party provision of any agreement; or
    h. any return, reduction, or offset of fees, charges, or commissions owed or paid to the *Insured.*

*Media Act.* Means, in *Covered Material:*
1. the unauthorized use of copyright, title, slogan, trademark, trade dress, service mark, domain name, logo, or service name;
2. the unauthorized use of a literary or artistic format, character, or performance;
3. a violation of an individual's right of privacy or publicity;
4. defamation, libel, slander, trade libel, or other tort related to disparagement or harm to the reputation or character of any person or entity;
5. the misappropriation of ideas under an implied contract;
6. improper deep-linking or framing; or
7. unfair competition, when alleged in connection with 1 through 6.

*Merchant Service Agreement.* Means a contract between the *Insured Entity* and an acquiring bank, or other acquiring institution, that establishes the terms and conditions for accepting and processing payment card transactions.

*Money.* 1. Means:
    a. currency, coins, or bank notes in circulation;
    b. bullion;
    c. *Virtual Currency;*
    d. traveler's checks;
    e. certified or cashier's checks; or
    f. money orders.
2. Does not include *Securities.*

© 2020 The Travelers Indemnity Company. All rights reserved.

| | |
|---|---|
| *Notification.* | Means written notice to *Impacted Parties* about a *Privacy Breach* or *Security Breach.* Multiple *Notifications* about the same *Privacy Breach* or *Security Breach* are deemed one *Notification.* |
| *Optional ERP.* | Means an extended reporting period for the time shown in the Optional ERP Endorsement starting on the effective date this Coverage is:<br>1. canceled; or<br>2. not renewed. |
| *Other Property.* | Means tangible property, other than *Money* or *Securities* that has intrinsic value. |
| *Payment Card Contract Penalties.* | Means fines, penalties, or assessments imposed under a *Merchant Service Agreement* against an *Insured Entity* for noncompliance with *Payment Card Security Standards.* |
| *Payment Card Security Standards.* | Means the Payment Card Industry Data Security Standard (PCI-DSS), or similar standard, to which the *Insured Entity* has agreed in a *Merchant Service Agreement.* |
| *Period Of Indemnity.* | Means the Period Of Indemnity shown in the CyberRisk Declarations. It begins on the earlier of the date of the first:<br>1. *Notification;* or<br>2. *Adverse Media Report,*<br>whichever is earlier. |
| *Period Of Restoration.* | Means the period of time that begins after the *Wait Period* ends, and ends on the earlier of:<br>1. the expiration of the Period Of Restoration shown in the CyberRisk Declarations; or<br>2. when the *Insured Entity's* business operations have been restored for a consecutive 24-hour period to the level of operation that existed immediately before the *First Party Event.* |
| *Policy Period.* | Means the Policy Period shown in the Declarations, which is subject to the cancelation of this Policy. |
| *Pollutant.* | Means a solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed. |
| *Potential Claim.* | Means conduct or circumstances that could reasonably be expected to give rise to a *Claim.* |
| *Privacy And Security Act.* | Means:<br>1. the failure to prevent a *Privacy Breach;*<br>2. the failure to destroy *Confidential Information;*<br>3. a violation of law, when alleged in connection with 1 or 2;<br>4. the failure to provide *Notification* required by law;<br>5. the failure to comply with a *Privacy Policy;*<br>6. the unauthorized, unlawful, or wrongful collection of *Confidential Information;* or<br>7. the failure to prevent a *Security Breach,* directly resulting in the:<br>   a. alteration or deletion of *Confidential Information;*<br>   b. transmission of a *Virus* into a computer or network system that is not a *Computer System;*<br>   c. participation in a denial-of-service attack directed against a computer or network system that is not a *Computer System;* or<br>   d. failure to provide an authorized user with access to a *Computer System.* |
| *Privacy Breach.* | Means the loss or theft of, or unauthorized access to or disclosure of, *Confidential Information.* |

© 2020 The Travelers Indemnity Company. All rights reserved.

| | |
|---|---|
| *Privacy Breach Notification Costs.* | Means reasonable costs or fees incurred or paid by an *Insured Entity*, voluntarily or as required by agreement or law, for: |

1. printing and delivering notice to;
2. providing credit or identity monitoring for up to 24 months, or longer where required by law, to;
3. call center services for;
4. the costs to purchase an identity fraud insurance policy to benefit natural persons who are; or
5. with the Insurer's prior written consent, other services to mitigate *Loss* or provide notice to,

*Impacted Parties*, if recommended and provided by an *Approved Provider*.

| | |
|---|---|
| *Privacy Policy.* | Means the *Insured Entity's* publicly available written policies or procedures regarding *Confidential Information*. |

| | |
|---|---|
| *Public Relations Costs.* | Means reasonable costs or fees for public relations services recommended and provided by an *Approved Provider* to mitigate or prevent negative publicity. |

| | |
|---|---|
| *Ransom.* | 1. Means: |

    a. *Money;*
    b. *Securities;* or
    c. the fair market value of property or services,
    paid or surrendered by, or on behalf of, the *Insured*.
2. Will be valued as of the date paid or surrendered.

| | |
|---|---|
| *Regulatory Costs.* | Means: |

1. civil money fines;
2. civil penalties; or
3. amounts deposited in a consumer redress fund,

imposed in a *Regulatory Proceeding*, to the extent insurable under the most favorable applicable law.

| | |
|---|---|
| *Regulatory Proceeding.* | Means an administrative or regulatory proceeding, or a civil investigative demand, brought by a domestic or foreign governmental entity. |

| | |
|---|---|
| *Reputation Harm.* | Means damage to the *Insured Entity's* reputation incurred during the *Period Of Indemnity* that results in *Income Loss*, other than the value of: |

1. coupons;
2. price discounts;
3. prizes;
4. awards; or
5. consideration given by the *Insured* in excess of the contracted or expected amount.

| | |
|---|---|
| *Restoration Costs.* | 1. Means the reasonable amounts incurred or paid by the *Insured*, with the Insurer's prior written consent: |

    a. to restore or recover damaged or destroyed computer programs, software, or electronic data stored within a *Computer System*, to its condition immediately before a *Security Breach;* or
    b. to determine that such computer programs, software, or electronic data cannot reasonably be restored or recovered.
2. Does not include:
    a. costs to recover or replace computer programs, software, or electronic data that the *Insured* did not have a license to use;

© 2020 The Travelers Indemnity Company. All rights reserved.

        b. costs to design, update, or improve the operation of computer programs or software;

        c. costs to recreate work product, research, or analysis; or

        d. wages, benefits, or overhead of the *Insured*.

**Run-Off Period.** Means the period starting on the date of the *Change Of Control* to the end of the *Policy Period*.

**Securities.** Means written agreements representing *Money* or property, other than *Virtual Currency*.

**Security Breach.** Means:

1. the unauthorized access to;
2. the use of authorized access to cause intentional harm to;
3. a denial-of-service attack against; or
4. the introduction of a *Virus* into,

a *Computer System*.

**Social Engineering Fraud.** Means intentionally misleading an *Insured Person*, by providing an instruction that

1. is not made by an *Insured*;
2. is purportedly from a *Vendor*, *Client*, or *Insured Person*;
3. directs the *Insured Person* to transfer, pay, or deliver *Money* or *Securities*;
4. contains a misrepresentation of material fact; and
5. is relied upon by the *Insured Person*, believing the material fact to be true.

**Subsidiary.** Means:

1. an entity while the Named Insured owns more than 50% of the outstanding securities or voting rights representing the right to select the entity's board of directors, or functional equivalent;
2. a nonprofit entity while the Named Insured exercises management control over such entity; or
3. an entity while the Named Insured owns exactly 50%, as a joint venture, and while an *Insured Entity* controls the entity's management and operations under a written agreement.

**System Failure.** Means an accidental, unintentional, and unplanned total or partial interruption of a *Computer System*, not caused by:

1. a *Security Breach*; or
2. a total or partial interruption of a third party computer system or network.

**Technology Act.** Means any error, omission, or negligent act by an *Insured*:

1. in the performance of or failure to perform *Technology Services*; or
2. that results in:

    a. the failure of *Technology Products* to perform the function or serve the purpose intended; or

    b. infringement of copyrighted software code or any other copyrighted element of any part of a software program in *Technology Products*.

**Technology Products.** Means goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by or on behalf of the *Insured Entity* for others.

**Technology Services.** Means:

1. work or services performed by or on behalf of the *Insured Entity* for others; and
2. materials, parts, or equipment furnished in connection with such work or services.

**Telecom Charges.** Means amounts charged to the *Insured Entity* for telephone services by its telephone service provider.

© 2020 The Travelers Indemnity Company. All rights reserved.

**Telecom Fraud.** Means the unauthorized access to, or use of, the *Insured Entity's* telephone system by a person or entity other than an *Insured Person.*

**Vendor.** Means a person or entity that provides goods or services to the *Insured Entity* under an agreement.

**Virtual Currency.**
1. Means a publicly available digital or electronic medium of exchange used and accepted as a means of payment.
2. Does not include:
   a. coupons;
   b. discounts;
   c. gift cards;
   d. rebates;
   e. reward points; or
   f. similar mediums of exchange.

**Virus.** Means malicious code that could destroy, or change the integrity or performance of, electronic data, software, or operating systems.

**Wait Period.** Means the Wait Period shown in the CyberRisk Declarations. It begins when a total or partial interruption to an *Insured Entity's* business operations is caused by a *First Party Event.* A separate *Wait Period* applies to each unrelated *First Party Event.*

**Wrongful Act.**
1. Means any:
   a. *Media Act;*
   b. *Privacy And Security Act;* or
   c. *Technology Act.*
2. All *Wrongful Acts* that share a common:
   a. nexus;
   b. set of facts;
   c. circumstance;
   d. situation;
   e. event; or
   f. decision,
   are deemed a single *Wrongful Act* that occurred at the time the first such *Wrongful Act* occurred.

## Exclusions

**Assumed Liability.**
1. The Insurer will not pay *Loss* arising out of liability assumed by an *Insured.*
2. This does not apply:
   a. when the *Insured* would have been liable in the absence of such assumption of liability;
   b. to a *Claim* for *Payment Card Contract Penalties;*
   c. to *Privacy Breach Notification Costs;* or
   d. to any privacy or confidentiality obligation that the *Insured* has agreed to under a *Privacy Policy* or nondisclosure agreement.

**Bodily Injury.**
1. The Insurer will not pay *Loss* for:
   a. bodily injury;
   b. sickness;
   c. disease;
   d. death; or

© 2020 The Travelers Indemnity Company. All rights reserved.

     e. loss of consortium.
    2. This does not apply to:
     a. emotional distress;
     b. mental anguish;
     c. humiliation; or
     d. loss of reputation.

**Conduct.** 1. The Insurer will not pay *Loss* arising out of an *Insured's*:
     a. intentionally dishonest or fraudulent act or omission; or
     b. willful violation of law or regulation.
    2. This does not apply to:
     a. *Defense Costs*; or
     b. *Loss* other than *Defense Costs*, unless a final nonappealable adjudication in the underlying action establishes such conduct occurred.
    3. In applying this exclusion, knowledge or conduct of an *Insured* will not be imputed to another *Insured*, except that knowledge or conduct of an *Executive Officer* will be imputed to the *Insured Entity*.

**Cost Guarantees Or Estimates.** The Insurer will not pay *Loss* under the Technology Errors And Omissions Insuring Agreement arising out of:
    1. any cost guarantee or cost estimate being exceeded; or
    2. cost overruns.

**Costs To Comply With Warranties Or For Recall, Removal, Or Withdrawal.** 1. The Insurer will not pay costs or fees under The Technology Errors And Omissions Insuring Agreement:
     a. to comply with any warranty for *Technology Products* or *Technology Services*;
     b. to repair, replace, upgrade, supplement, or otherwise improve *Technology Products* or *Technology Services*;
     c. to perform or complete *Technology Services*;
     d. for the recall, removal, or withdrawal of *Technology Products* or *Technology Services*:
      i. from the market; or
      ii. from use by any person or organization; or
     e. for the adjustment, inspection, or disposal of *Technology Products* or *Technology Services*.
    2. This does not apply to loss of use of *Technology Products* or *Technology Services*.

**Cyber Crime.** The Cyber Crime Insuring Agreements do not apply to:
    1. indirect or consequential loss;
    2. potential income, including interest and dividends, not realized by an *Insured* or *Client*;
    3. loss of confidential information;
    4. loss of intellectual property;
    5. loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, or other cards;
    6. loss resulting from a fraudulent instruction, if the sender or anyone acting in collusion with the sender, ever had authorized access to the *Insured's* password, PIN, or other security code;
    7. amounts the *Insured* incurs without a legal obligation to do so;
    8. loss resulting from forged, altered, or fraudulent negotiable instruments, securities, documents, or instructions used as source documentation to enter electronic data or send instructions, provided this does not apply to the Social Engineering Fraud Insuring Agreement;

© 2020 The Travelers Indemnity Company. All rights reserved.

9. loss resulting from the failure of any party to perform under any contract; or

10. loss due to any nonpayment of, or default upon, any loan, extension of credit, or similar promise to pay.

**Employee Benefit Plans.** The Insurer will not pay *Loss* under the Technology Errors And Omissions Insuring Agreement arising out of any actual or proposed:

1. welfare plan;
2. pension plan;
3. employee stock ownership plan; or
4. any other benefit plan,

sponsored by or on behalf of the *Insured* for the benefit of past, present, or future *Employees* or *Independent Contractors*.

**Employment Practices Claims.** The Insurer will not pay *Loss* under the Technology Errors And Omissions Insuring Agreement arising out of employment-based discrimination, harassment, wrongful termination, or other employment practices related acts.

**Government Action.** The Insurer will not pay *Loss* arising out of:

1. seizure;
2. confiscation;
3. nationalization;
4. requisition; or
5. destruction of property,

by or under the order of domestic or foreign government authority.

**Government Demands.**
1. The Insurer will not pay *Loss* under the Technology Errors And Omissions Insuring Agreement arising out of any *Regulatory Proceeding*.
2. This does not apply to *Claims* brought by such domestic or foreign governmental entity in its capacity as a *Client*.

**Infrastructure.** The Insurer will not pay *Loss* arising out of a total or partial interruption or failure of any:

1. satellite;
2. electrical or mechanical system;
3. electric, gas, water, or other utility;
4. cable, telecommunications, or Internet service provider; or
5. other infrastructure,

except when such is under the *Insured's* control.

**Insured vs. Insured.**
1. The Insurer will not pay *Loss* for a *Claim* brought by or on behalf of:
   a. an *Insured*; or
   b. an entity that, at the time the *Wrongful Act* occurs, or the date the *Claim* is made:
      i. is owned, operated, or controlled by any *Insured*; or
      ii. owns, operates, or controls any *Insured*.
2. This does not apply to a *Claim*:
   a. by an *Insured Person* for contribution or indemnity, if resulting from another covered *Claim*; or
   b. by or on behalf of an *Insured Person* or *Additional Insured* who did not commit or participate in the *Wrongful Act*.

© 2020 The Travelers Indemnity Company. All rights reserved.

**Intellectual Property.**
1. The Insurer will not pay *Loss* arising out of an *Insured's* misappropriation, infringement, or violation of:
   a. copyrighted software; except under the Technology Errors And Omissions Insuring Agreement
   b. patent rights or laws; or
   c. trade secret rights or laws.
2. The Insurer will not pay *Loss* under the Technology Errors And Omissions Insuring Agreement arising out of:
   a. misappropriation, infringement, or violation of:
      i. title;
      ii. slogan;
      iii. trademark;
      iv. trade dress;
      v. service mark;
      vi. domain name;
      vii. logo; or
      viii. service name,
      rights or laws; or
   b. any other violation of intellectual property rights or laws, other than copyrighted software rights or laws.

**Labor Disputes.** The Insurer will not pay *Loss* under the Business Loss Insuring Agreements arising out of labor disputes.

**Licensing And Royalties.** The Insurer will not pay *Loss* arising out of any obligation to pay licensing fees or royalties.

**Ownership Rights.** The Insurer will not pay *Loss* for a *Claim* by, or on behalf of, an independent contractor, joint venturer, or venture partner arising out of disputes over ownership rights in *Covered Material*.

**Personal Injury.** The Insurer will not pay *Loss* under the Technology Errors And Omissions Insuring Agreement arising out of:
1. a violation of an individual's right of privacy or publicity;
2. defamation, libel, slander, trade libel, or other tort related to disparagement or harm to the reputation or character of any person or entity;
3. false arrest, detention, or imprisonment;
4. malicious prosecution; or
5. wrongful eviction, wrongful entry, or invasion of the right of private occupancy.

**Physical Peril.** The Insurer will not pay *Loss* arising out of:
1. fire, smoke, or explosion;
2. lightning, wind, rain, or hail;
3. surface water, waves, flood, or overflow of any body of water;
4. earthquake, earth movement, or earth sinking;
5. mudslide, landslide, erosion, or volcanic eruption;
6. collapse, wear and tear, rust, corrosion, or deterioration;
7. magnetic or electromagnetic fields;
8. extremes of temperature or humidity; or
9. any similar physical event or peril.

**Pollution.** The Insurer will not pay *Loss* arising out of:
1. the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of a *Pollutant*;

© 2020 The Travelers Indemnity Company. All rights reserved.
TRAVELERS DOC MGMT Page 27 of 48

2. a request, demand, order, or statutory, or regulatory requirement that an *Insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess, the effects of, a *Pollutant*; or

3. testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of, a *Pollutant*.

**Prior Acts.** The Insurer will not pay *Loss* arising out of a *Wrongful Act* that occurs prior to any applicable Retro Date shown in the CyberRisk Declarations.

**Prior Matters.** The Insurer will not pay *Loss* arising out of any fact, circumstance, situation, event, or *Wrongful Act:*

1. that is, or reasonably would be regarded as, the basis for a *Claim* under the Liability Insuring Agreements about which any *Executive Officer* had knowledge prior to the Knowledge Date shown in the CyberRisk Declarations;

2. that, prior to the Inception date shown in the Declarations, was the subject of any notice of claim, or circumstance, given by or on behalf of any *Insured* and accepted under any policy of insurance that this Coverage directly renews, replaces, or succeeds in time; or

3. previously alleged in a civil, criminal, administrative, or regulatory proceeding against any *Insured* prior to the P&P Date shown in the CyberRisk Declarations.

**Professional Services.** The Insurer will not pay *Loss* under the Technology Errors And Omissions Insuring Agreement arising out of providing, or failing to provide, any:

1. professional services as:
   a. an accountant;
   b. an architect or surveyor;
   c. a lawyer;
   d. an insurance agent, broker, company, consultant, or representative;
   e. a real estate agent or broker; or
   f. a civil or structural engineer, or

2. medical, surgical, dental, laboratory, x-ray, or nursing service, treatment, advice, or instruction.

**Property Damage.**
1. The Insurer will not pay *Loss* under the Liability or Breach Response Insuring Agreements for the:
   a. damage to;
   b. destruction of;
   c. loss of; or
   d. loss of use of,
   any tangible property.

2. The Insurer will not pay *Loss* under the Cyber Crime or Business Loss Insuring Agreements arising out of the:
   a. damage to;
   b. destruction of;
   c. loss of; or
   d. loss of use of,
   any tangible property, other than loss of *Other Property* covered under the Computer Fraud Insuring Agreement.

**Securities Laws.** The Insurer will not pay *Loss* arising out of:
1. a violation of a securities law or regulation; or
2. except under the Cyber Crime Insuring Agreements:
   a. the ownership of;
   b. the sale or purchase of; or

© 2020 The Travelers Indemnity Company. All rights reserved.

c. the offer to sell or purchase, stock or other securities.

**Unlawful Collection.**
1. The Insurer will not pay *Loss* arising out of the collection of *Confidential Information* in violation of law.
2. This does not apply to *Defense Costs*.

**Unsolicited Communications.**
1. The Insurer will not pay *Loss* arising out of a violation of a law that restricts or prohibits unsolicited communications.
2. This does not apply to a *Security Breach* under the Breach Response Insuring Agreements.

**Violation Of Consumer Protection Laws.**
The Insurer will not pay *Loss* under the Technology Errors And Omissions Insuring Agreement arising out of any actual or alleged
1. unfair or deceptive trade practice;
2. unfair competition; or
3. actual or alleged violation of any other consumer protection law, committed by or on behalf of an *Insured*.

**War.**
1. The Insurer will not pay *Loss* arising out of:
   a. war, including undeclared or civil war;
   b. warlike action, including action in hindering or defending against an actual or expected attack, by any government, military force, sovereign, or other authority using military personnel or other agents; or
   c. insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.
2. This does not apply to an actual or threatened attack against a *Computer System* with intent to cause harm, or further social, ideological, religious, political, or similar objectives, except when in support of 1a through 1c.

## Limits And Retentions

**Limits Of Insurance.**
1. The most the Insurer will pay for all *Loss* is the CyberRisk Aggregate Limit shown in the CyberRisk Declarations.
2. The most the Insurer will pay for all *Loss* under an Insuring Agreement is the applicable Limit for such Insuring Agreement shown in the CyberRisk Declarations; but:
   a. The most the Insurer will pay for all *Payment Card Contract Penalties* is the Payment Card Costs Limit shown in the CyberRisk Declarations, which is within and will reduce the Privacy And Security Limit.
   b. The most the Insurer will pay for all *Business Interruption Loss* that results from a *System Failure* is the System Failure Limit shown in the CyberRisk Declarations, which is within and will reduce the Business Interruption Limit.
   c. Payment of *Loss* under the Dependent Business Interruption Insuring Agreement and Reputation Harm Insuring Agreement is within and will reduce, the remaining Business Interruption Limit.
   d. The most the Insurer will pay for all *Accounting Costs* is the Accounting Costs Limit shown in the CyberRisk Declarations, which is within and will reduce the Limit for the applicable Business Loss Insuring Agreement.
   e. If a Betterment Coparticipation percentage is shown in the CyberRisk Declarations, such percentage of *Betterment Costs* will be paid by the *Insured*. The Insurer will pay the remaining *Betterment Costs*, up to the Betterment Limit shown in the CyberRisk Declarations.

© 2020 The Travelers Indemnity Company. All rights reserved.

3. The most the Insurer will pay for all *Loss* with respect to an *Additional Insured* is the limit agreed to in the agreement between such *Additional Insured* and the *Insured Entity*, or the applicable Limit shown in the CyberRisk Declarations, whichever is less.

4. If the CyberRisk Declarations indicates that a Shared Limit applies, the most the Insurer will pay under all Shared Coverages is the Shared Limit shown in the Shared Limit Declarations.

5. Once the CyberRisk Aggregate Limit or Shared Limit is exhausted, the premium is fully earned, and all obligations of the Insurer, including any duty to defend, will cease.

**Retention.**
1. The Insurer will only pay *Loss* once the applicable Retention shown in the CyberRisk Declarations has been paid by the *Insured*.

2. Except for the Betterment Insuring Agreement, if multiple Retentions apply to:
   a. a *Claim*;
   b. a *First Party Event*; or
   c. *Claims* and *First Party Events* that share a common nexus, set of facts, circumstance, situation, event, or decision,

   the *Insured* will not pay more than the amount of the largest applicable Retention.

3. The *Insured Person* is deemed indemnified by the *Insured Entity* to the extent permitted or required by law, written agreement, or the by-laws of the *Insured Entity*. For the Liability Insuring Agreements, no Retention will apply to an *Insured Person* if indemnification by the *Insured Entity* is:
   a. not permitted by law; or
   b. not possible due to the financial insolvency of such *Insured Entity*.

4. The Insurer may pay any amount of Retention. In such event, the *Insured* agrees to repay the Insurer such amounts.

## Other Conditions

**Allocation.**
1. Subject to Other Conditions, Settlement, if an *Insured* incurs:
   a. *Loss* jointly with others who are not covered for a *Claim*; or
   b. *Loss* covered and loss not covered by this Coverage because a *Claim* includes both covered and uncovered matters,

   then the *Insured* and the Insurer will use their best efforts to allocate such amount between covered *Loss* and uncovered loss based upon the relative legal and financial exposures of the parties to covered and uncovered matters.

2. If the CyberRisk Declarations shows that the Insurer has the duty to defend *Claims*, all *Defense Costs* will be allocated to covered *Loss*.

**Cancelation And Nonrenewal.**
1. The Insurer will cancel this Coverage only if premium is not paid when due. If nonpayment occurs, the Insurer will give at least 20 days written notice of cancelation to the Named Insured. Unless payment is received when due, this Coverage will be canceled.

2. The Named Insured may cancel any part of this Coverage by giving advanced written notice to the Insurer, stating when such cancelation will be effective.

3. If any part of this Coverage is canceled, the Insurer will refund the unearned premium on a pro rata basis.

4. The Insurer is not required to renew this Coverage upon its expiration. If the Insurer elects not to renew, it will provide the Named Insured written notice to that effect at least 60 days before the Expiration date shown in the Declarations.

**Change Of Structure.**
1. Under the Liability and Breach Response Insuring Agreements, if a *Change Of Control* occurs during the *Policy Period*, the coverage will continue for the *Run-Off Period*.

2. Coverage during the *Run-Off Period* is only for *Wrongful Acts* or *First Party Events* occurring before such *Change Of Control*.

3. Under the Cyber Crime and Business Loss Insuring Agreements, if an entity ceases to be an *Insured Entity* during the *Policy Period*, *First Party Loss* is only covered if:

    a. such *First Party Loss* is sustained; and

    b. the applicable *First Party Event* is *Discovered*,

    prior to the time such entity ceased to be an *Insured Entity*.

4. The Named Insured may request to extend the time of the *Run-Off Period*.

**Claim Defense.**

1. If the CyberRisk Declarations shows that the Insurer has the duty to defend *Claims*, the Insurer:

    a. has the right and duty to defend covered *Claims*, even if groundless or false;

    b. has the right to select defense counsel for such *Claims*; and

    c. has no duty to defend, or to continue to defend, *Claims* after the applicable Limit has been exhausted.

2. If the CyberRisk Declarations shows that the Insurer does not have the duty to defend *Claims*:

    a. the *Insured* has the duty to defend *Claims*;

    b. the Insurer has the right to participate in the selection of defense counsel;

    c. the Insurer has the right to participate in the investigation, defense, and settlement of such *Claims*;

    d. subject to the applicable Limit, the Insurer will reimburse the *Insured* for *Defense Costs*;

    e. upon written request, the Insurer will advance *Defense Costs*; and

    f. advanced *Defense Costs* will be repaid to the Insurer to the extent that the *Insured* is not entitled to such payment.

3. With respect to a *Claim*, the *Insured* will not, without the Insurer's prior written consent:

    a. make an offer to settle, or settle, a *Claim*;

    b. admit liability; or

    c. except at the *Insured's* own cost, make a voluntary payment, pay or incur *Defense Costs* or other expense, or assume any obligation.

**Cyber Crime And Business Loss Change.**

The Cyber Crime and Business Loss Insuring Agreements will end upon:

1. a *Change Of Control*; or

2. the voluntary liquidation or dissolution of the Named Insured.

**ERP - Automatic.**

1. The *Automatic ERP* applies without additional premium.

2. *Claims* resulting from *Wrongful Acts* that occur prior to cancelation or nonrenewal can be made and reported to the Insurer during the *Automatic ERP*. Such *Claim* is deemed reported on the last day of the *Policy Period*.

3. The most the Insurer will pay for *Loss* resulting from *Claims* reported during the *Automatic ERP* is the remaining portion of the applicable Limit shown in the CyberRisk Declarations as of the effective date of cancelation or nonrenewal.

**ERP - Optional.**

1. The Named Insured may elect to purchase an *Optional ERP* shown in the CyberRisk Declarations for any reason other than nonpayment of premium. The *Optional ERP* will only take effect if:

    a. the Insurer receives written notice of such election no later than 90 days after cancelation or nonrenewal; and

    b. the additional premium for the *Optional ERP* is paid when due.

2. *Claims* or *Potential Claims* resulting from *Wrongful Acts* that occur prior to cancelation or nonrenewal can be made and reported to the Insurer during the *Optional ERP*. Such *Claim* or *Potential Claim* is deemed reported on the last day of the *Policy Period*.

3. For the Privacy Breach Notification, Computer And Legal Experts, and Public Relations Insuring Agreements, *First Party Loss* that results from a *First Party Event* occurring prior to cancelation or nonrenewal can be *Discovered* during the *Optional ERP*. Such *First Party Event* is deemed *Discovered* on the last day of the *Policy Period*.

© 2020 The Travelers Indemnity Company. All rights reserved.

4. The premium due for the *Optional ERP* is shown in the CyberRisk Declarations. Such premium is fully earned at the start of the *Optional ERP*.

5. The most the Insurer will pay for *Loss* resulting from *Claims* made, or *First Party Events Discovered*, during the *Optional ERP* is the remaining portion of the applicable Limit shown in the CyberRisk Declarations as of the effective date of cancelation or nonrenewal.

6. When the *Optional ERP* applies, it replaces the *Automatic ERP* and the Extended Discovery Period for the Privacy Breach Notification, Computer And Legal Experts, and Public Relations Insuring Agreements.

**Extended Discovery Period.**

1. For the *First Party Insuring Agreements*, the *Insured* has an extended period of time to *Discover* a *First Party Loss* arising out of a *First Party Event* that occurred prior to the effective date of cancelation. Such *First Party Event* will be deemed *Discovered* on the last day of the *Policy Period*. This period begins on the effective date such *First Party Insuring Agreement* is canceled. It ends on the earlier of:
   a. 90 days; or
   b. the effective date of similar coverage purchased by the *Insured*, even if such insurance does not provide coverage for loss sustained prior to its effective date.

2. When *Optional ERP* is purchased, it replaces the Extended Discovery Period for the Privacy Breach Notification, Computer And Legal Experts, and Public Relations Insuring Agreements.

**Income Loss Appraisal.**

If, after submission of the Proof of Loss, the Insurer and *Insured* do not agree on the amount of *Income Loss*, each party will select an appraiser. If the appraisers do not agree, they will select an umpire. Each appraiser will submit the amount of *Income Loss* to the umpire. Agreement by the umpire and at least one of the appraisers as to the amount of *Income Loss* is binding.

Each party will:

1. pay its own appraiser, except when covered as *Accounting Costs*; and
2. share the fees and costs of the umpire equally.

**Notice Of Claim.**

1. If an *Insured* gives the Insurer written notice of a *Potential Claim* during the *Policy Period*, or any extended reporting period, then a *Claim* subsequently arising from such *Potential Claim* will be deemed made on the last day of the *Policy Period*. Such notice must include a description of the anticipated allegations of *Wrongful Acts*, potential damages, and the names of potential claimants and *Insureds* involved.

2. Once an *Executive Officer* becomes aware that a *Claim* has been made, the *Insured* must give the Insurer written notice of such *Claim* as soon as practicable. If such *Claim* involves facts that are subject to a court order or law enforcement hold, the *Insured* must give the Insurer written notice of such *Claim* as soon as practicable once such order or hold is not in effect. Such notice must include a copy of the *Claim* or description of its particulars.

3. All notices under this section must be sent to the Insurer at an address shown in the Declarations.

**Notice Of First Party Event.**

1. Upon the *Discovery* of a *First Party Event*, the *Insured* must give the Insurer written notice of the particulars of such event, as soon as practicable.

2. If such *First Party Event* causes *First Party Loss* under the Cyber Crime or Business Loss Insuring Agreements in an amount more than 25% of the applicable Retention, the *Insured* must
   a. give the Insurer a detailed, sworn Proof of Loss within 120 days;
   b. submit to an examination Under Oath, and give the Insurer a signed statement of the *Insured's* answers; and
   c. notify law enforcement, if such *First Party Event* violates law.

3. Demands for payment of *First Party Loss* must be provided to the Insurer by the *Insured Entity*.

4. All notices and demands must be sent to the Insurer at an address shown in the Declarations.

© 2020 The Travelers Indemnity Company. All rights reserved.

**Other Insurance.**
1. The Breach Response and Business Loss Insuring Agreements are primary insurance.
2. The Liability and Cyber Crime Insuring Agreements are excess over, and will not contribute with, any other valid and collectible insurance available to the *Insured*. This applies even if such other insurance is stated to be primary, excess, or otherwise, unless such other insurance states by specific reference that it is excess over this Coverage.

**Property Covered.** Coverage under the Cyber Crime Insuring Agreements is limited to property:
1. the *Insured Entity*:
   a. owns;
   b. leases; or
   c. holds for others; or
2. for which the *Insured Entity* is legally liable, except property located inside premises of the *Insured Entity's* client or such client's financial institution.

**Recovery And Subrogation.**
1. The Insurer has no duty to recover amounts paid under this Coverage.
2. Amounts recovered from a third party, less costs incurred in obtaining such recovery, will be applied in this order:
   a. to the Insurer for any Retention it paid on behalf of an *Insured*;
   b. to the *Insured* for *Loss* the Insurer did not pay because the applicable Limit was exhausted;
   c. to the Insurer for *Loss* it paid;
   d. to the *Insured* for any Retention it paid; and then
   e. to the *Insured* for any uncovered loss it paid.
3. Recoveries do not include amounts from insurance or reinsurance.
4. The Insurer is subrogated to, and the *Insured* must transfer to the Insurer, all of the *Insured's* rights of recovery against any person or organization for *Loss* the Insurer has paid under this Coverage. The *Insured* agrees to:
   a. execute and deliver instruments and papers;
   b. do everything necessary to secure such rights; and
   c. do nothing to impair or prejudice those rights.
5. Subrogation will not apply if the *Insured*, prior to the date of a *Wrongful Act* or a *First Party Event*, waived its rights to recovery.
6. Any of the *Insured Entity's* property that the Insurer pays for becomes the Insurer's property.

**Related Claims.** Multiple *Claims* arising out of the same *Wrongful Act* are a single *Claim* that is deemed first made on the date the earliest of such *Claims* is made, whether before or during the *Policy Period*.

**Representations.**
1. The Insurer has issued this coverage in reliance on the accuracy and completeness of the representations that the *Insured* made to the Insurer.
2. If any such representation is untrue, and
   a. was material to the acceptance of the risk; and
   b. is material to a covered *Loss*,
   then this coverage will not apply to such *Loss* with respect to:
   i. an *Insured Person* who knew; or
   ii. an *Insured Entity*, if an *Executive Officer* knew,
   that such representation was untrue on the Inception date shown in the Declarations.

**Settlement.** The Insurer may, with the written consent of the *Insured*, settle a *Claim*. If the Insurer and claimant agree to settle a *Claim* but the *Insured* withholds its consent, the *Insured* will be responsible for 20% of all:
1. *Defense Costs* incurred after the date the *Insured* withheld its consent; and
2. *Loss*, other than *Defense Costs*, in excess of such settlement offer.

© 2020 The Travelers Indemnity Company. All rights reserved.

**Subsidiaries.** If a *Subsidiary* is acquired or created by an *Insured Entity* during the *Policy Period,* and its revenues are:

1. less than 35% of the total annual revenues of such *Insured Entity,* then it will be covered for *Wrongful Acts* or *First Party Events* that occur after its acquisition or creation; or

2. are at least 35% of the total annual revenues of such *Insured Entity,* then it will be covered for:

   a. *Wrongful Acts* that occur after its acquisition or creation, for *Claims* made; or

   b. *First Party Events* that occur after its acquisition or creation and that are *Discovered* and reported,

   within 90 days of its acquisition or creation, or the end of the *Policy Period,* whichever is earlier. Additional coverage may be negotiated at the time of acquisition or creation.

**Suits Against The Insurer – Cyber Crime.** The *Insured Entity* may not bring any legal action against the Insurer involving a *First Party Event* covered under the Cyber Crime Insuring Agreements:

1. until 60 days after the *Insured Entity* has filed Proof of Loss; and

2. unless such legal action is commenced within two years from the date the *Insured Entity* Discovers the *First Party Event.*

**Valuation Under First Party Insuring Agreements.**

1. *Money,* except *Virtual Currency,* is valued in the U.S. dollar equivalent determined at the rate of exchange published by The Wall Street Journal:

   a. for the Cyber Crime Insuring Agreements, on the date the *First Party Event* was *Discovered;* and

   b. for the Breach Response and Business Loss Insuring Agreements, on the date of payment of *First Party Loss.*

2. *Securities* are valued at market value as of the close of business on the date the *First Party Event* was *Discovered;* and at its discretion, the Insurer will:

   a. pay the *Insured Entity* such value;

   b. replace such *Securities* in kind, in which case the *Insured Entity* must assign to the Insurer all rights, title, and interest in such *Securities;* or

   c. pay the cost of a Lost Securities Bond required when issuing duplicates of the *Securities.* Such Lost Securities Bond will have a penalty no more than the value of the *Securities* at the close of business on the date the *First Party Event* was *Discovered.*

3. *Virtual Currency* is valued in the U.S. dollar equivalent determined at the rate of exchange:

   a. for the Cyber Crime Insuring Agreements, on the date the *First Party Event* was *Discovered;* and

   b. for the Breach Response and Business Loss Insuring Agreements, on the date of payment of *First Party Loss.*

4. *Other Property* is valued for the lesser of:

   a. the actual cash value of the *Other Property* on the date the *First Party Event* was *Discovered;* or

   b. the cost to replace *Other Property* with comparable property, but only after such property is actually replaced.

© 2020 The Travelers Indemnity Company. All rights reserved.

**Authorization And Changes.**

The Named Insured will act on behalf of all *Insureds* regarding the payment of premium, receipt of return premium, change of coverage, and receipt of notices of cancelation or nonrenewal. Each *Insured* agrees that they have delegated such authority to the Named Insured.

The Named Insured may change this Policy with the Insurer's consent by endorsement to this Policy. No rights or duties under this policy may be transferred or assigned without the Insurer's written consent.

**Conformity To Law.**

Any part of this Policy that conflicts with applicable statutory or regulatory law is changed to conform to such law. This Policy provides coverage and benefits only to the extent that it does not expose the Insurer, or any of its subsidiaries, or affiliated companies, to a trade or economic sanction, prohibition, or restriction under a U.N. resolution, trade or economic sanction, or E.U., U.K., or U.S. law or regulation.

**Consent And Cooperation.**

Where the Insurer's consent is required, such consent will not be unreasonably withheld. The *Insured* agrees to give all information, assistance, and cooperation the Insurer reasonably requires.

**Representatives.**

In the event of an *Insured Person's* death, incapacity, or bankruptcy, this Policy will afford coverage to his or her:

1. estate;
2. legal representative;
3. legal spouse, domestic partner, or party to a civil union; or
4. assignee,

but only to the extent that it would have applied to such *Insured Person.*

**Suits Against The Insurer.**

No person or entity has the right under this Policy to join the Insurer as a party in an action against an *Insured* to determine such *Insured's* liability, nor may the Insurer be impleaded by any *Insured.* No action will lie against the Insurer unless there has been full compliance with all the terms of this Policy.

**Territory And Valuation.**

This Policy applies anywhere in the world, but it does not apply to *Loss* incurred by an *Insured* residing or domiciled in a country or jurisdiction in which the Insurer is not licensed to provide this insurance, to the extent that providing this insurance would violate any applicable foreign law or regulation ("Foreign Loss").

If an *Insured Entity* incurs Foreign Loss, the Insurer will reimburse the Named Insured for such Foreign Loss because of the Named Insured's financial interest in such *Insured Entity.* If an *Insured Person* incurs Foreign Loss not indemnified by an *Insured Entity*, such Foreign Loss will be paid in a country or jurisdiction mutually acceptable to such *Insured Person* and the Insurer, to the extent that doing so would not violate any applicable foreign law or regulation.

All amounts in this Policy are stated in U.S. Dollars. If amounts are due under a liability coverage and are stated in a different currency, payment will be made in U.S. Dollars at the exchange rate published in The Wall Street Journal at the time the final amount is determined.

**Titles, Headings, And Defined Terms.**

The titles and headings in this Policy do not affect coverage. Where appearing in this Policy, in singular or plural, words and phrases appearing in italicized type have the meaning shown in the Definitions of the applicable Coverage.

---

Issuing Company:　TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Policy Number:　ZPL-71N49757-22-I3

AFE-16001 Ed. 01-19　　　　　　　　　　　　　　　　　　　　　　　　Page 1 of 1
© 2019 The Travelers Indemnity Company. All rights reserved.

This endorsement changes the Policy to comply
with Illinois law. It supersedes all terms of this
Policy, including other endorsements.

**Illinois Changes Endorsement**

If this Policy is construed under the laws of the state of Illinois, the following applies:

1. **Bankruptcy Or Insolvency Of The Insured.**

   Bankruptcy or insolvency of the *Insured* does not relieve the Insurer of any of its obligations under this Policy.

2. **Exclusions - Physical Peril.**

   "Electromagnetic fields" is deleted.

3. **Other Insurance.**

   If loss is covered under this Policy and any other valid and collectible insurance of the same type, then this Policy will apply proportionately with such other insurance, unless it is written as excess insurance over this Policy.

4. **Pollution.**

   If this Policy contains a Pollution exclusion, such exclusion does not apply to heat, smoke, or fumes from an uncontrollable fire, or fire that breaks out from where it was intended to be.

5. **Prejudgment Or Postjudgment Interest.**

   If any coverage includes prejudgment or postjudgment interest, it will be paid in addition to the applicable Limit.

6. **Punitive Damages.**

   For *Claims* brought in the state of Illinois, punitive or exemplary damages are covered only in cases involving the *Insured's* vicarious liability.

7. **Offer To Purchase An Optional ERP.**

   The Named Insured may elect to purchase an *Optional ERP* if this policy is canceled or nonrenewed for any reason. The *Optional ERP* will not take effect unless any premium owed for the Policy and for the *Optional ERP* is paid when due.

8. **Optional ERP Premium.**

   *Optional ERP* premium will be calculated based on the expiring annual premium.

9. **Suits Against The Insurer - Cyber Crime.**

   When this Policy includes Cyber Crime Insuring Agreements, the time period to bring legal action against the Insurer is tolled from the date Proof of Loss is filed until the date of any claim denial.

10. **Cancelation And Nonrenewal.**

    Any notice of cancelation or nonrenewal will be sent to the Named Insured at its last known address.

Issuing Company: TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Policy Number: ZPL-71N49757-22-I3

© 2021 The Travelers Indemnity Company. All rights reserved.

There are five changes described below:

1. The following is added to **Business Loss Insuring Agreements, Dependent Business Interruption**:

   The Insurer will also pay the *Insured* for its *Business Interruption Loss,* directly caused by an *IT Provider System Failure* that is *Discovered* during the *Policy Period.*

2. The following is added to **Definitions,** *First Party Event:*

   Includes an *IT Provider System Failure.*

3. The following is added to **Definitions:**

   *IT Provider System Failure.* Means an accidental, unintentional, and unplanned total or partial interruption of an *IT Provider's* computer system not caused by an *IT Provider Breach.*

4. The following is added to **Exclusions, Property Damage 2:**

   This does not apply to *Business Interruption Loss* resulting from the loss of use of an *IT Provider's* computer system.

5. The following is added to **Limits and Retentions, Limit of Insurance, 2:**

   The most the Insurer will pay for *Business Interruption Loss* that results from an *IT Provider System Failure* is the Dependent Business Interruption − System Failure Limit shown in the CyberRisk Declarations, which is within and will reduce the Dependent Business Interruption Limit.

Issuing Company: TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Policy Number: ZPL-71N49757-22-I3

CYB-19102 Rev. 06-20
© 2020 The Travelers Indemnity Company. All rights reserved.

There are ten changes described below:

1. The following is added to **Cyber Crime Insuring Agreements:**

   **Vendor Or Client Payment Fraud.**

   The Insurer will pay the *Insured Entity* for *Vendor Or Client Payment Fraud Loss* that arises out of a *Security Breach* that is discovered during the Policy Period.

2. The following is added to **Definitions:**

   *Vendor Or Client Payment Fraud.* Means an instruction that intentionally misleads a *Vendor* or *Client,* when such instruction:

   1. is not made by an *Insured;*
   2. is purportedly from an *Insured;*
   3. directs such *Vendor* to perform services or deliver goods, or such *Client* to deliver payment to, an unintended recipient;
   4. contains a misrepresentation of material fact; and
   5. is relied upon by such *Vendor* or *Client,* believing the material fact to be true.

   *Vendor Or Client Payment Fraud Loss.* Means:

   1. *Money* owed to the *Insured Entity* but not collected for services rendered or goods delivered to a *Client,* or
   2. the amount the *Insured Entity* paid a *Vendor* for goods or services the *Insured Entity* did not receive;

   directly caused by *Vendor Or Client Payment Fraud.*

3. The following is added to **Definitions,** *Computer Fraud:*

   Does not include *Vendor Or Client Payment Fraud.*

4. The following is added to **Definitions,** *First Party Event:*

   Includes *Vendor Or Client Payment Fraud.*

5. The following is added to **Definitions,** *First Party Loss:*

   Includes *Vendor Or Client Payment Fraud Loss.*

6. The following is added to **Definitions,** *Funds Transfer Fraud:*

   Does not include *Vendor Or Client Payment Fraud.*

7. The following replaces **Exclusions, Cyber Crime,** 8:

   loss resulting from forged, altered, or fraudulent negotiable instruments, securities, documents, or instructions used as source documentation to enter electronic data or send instructions, provided this does not apply to the Social Engineering Fraud or the Vendor Or Client Payment Fraud Insuring Agreements.

8. The following is added to **Other Conditions, Property Covered:**

   This does not apply to the Vendor Or Client Payment Fraud Insuring Agreement.

9. The following is added to **Other Conditions:**

   **Property Covered - Vendor Or Client Payment Fraud**

   Coverage under the Vendor Or Client Payment Fraud Insuring Agreement is limited to:

   1. *Money* owed to the *Insured Entity* but not collected for services rendered or goods delivered to a *Client,* or
   2. the amount the *Insured Entity* paid a *Vendor* for goods or services the *Insured Entity* did not receive.

Issuing Company: TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Policy Number: ZPL-71N49757-22-I3

© 2019 The Travelers Indemnity Company. All rights reserved.

10. The following is added to the Declarations:

| Vendor Or Client Payment Fraud Limit | Vendor Or Client Payment Fraud Retention |
|---|---|
| $100,000 | $25,000 |

© 2019 The Travelers Indemnity Company. All rights reserved.

There are three changes described below:

1.  The following is added to **Definitions**, *Extra Expense*:

    Includes such reasonable costs incurred by the *Insured Entity*, with the Insurer's written consent, to replace any *Bricked Equipment* with functionally equivalent equipment, if such *Bricked Equipment* is inoperable:

    1.  directly as a result of a *Security Breach*; and
    2.  if reasonable attempts to restore such *Bricked Equipment* fail.

    Such costs may include newer versions or models of such *Bricked Equipment*.

2.  The following is added to **Definitions**:

    *Bricked Equipment*: Means any inoperable computer, input, output, processing, storage, or communication device:

    1.  owned by;
    2.  leased to;
    3.  licensed to; or
    4.  under the direct operational control of,

    the *Insured Entity*, or an *Insured Person*, while authorized by, and transacting business on behalf of, the *Insured Entity*.

3.  The following is added to **Exclusions, Property Damage 2**:

    This does not apply to *Business Interruption Loss* resulting from the loss of use of a *Computer System*.

Issuing Company: TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Policy Number: ZPL-71N49757-22-I3

© 2019 The Travelers Indemnity Company. All rights reserved.

The following is added to **Exclusions**:

**Biometric Data Exclusion.**

The Insurer will not pay *Loss* based upon or arising out of any violation the Illinois Biometric Information Privacy Act.

Issuing Company:  TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Policy Number:  ZPL-71N49757-22-I3

© 2019 The Travelers Indemnity Company. All rights reserved.

This endorsement changes the CyberRisk Coverage.

**First Party Insuring Agreements Aggregate Limit Endorsement**

There are two changes described below:

1. The following is added to **CyberRisk Declarations**:

   First Party Insuring Agreements Aggregate Limit   $500,000

2. The following is added to **Limits And Retentions, Limits Of Insurance**:

   The most the Insurer will pay for all *Loss* under the *First Party Insuring Agreements* is the First Party Insuring Agreements Aggregate Limit shown in the CyberRisk Declarations.

   If *Loss* is covered under:
   1. this Coverage; and
   2. any other insurance issued by the Insurer or any of its affiliates,

   the maximum amount the Insurer and its affiliates will pay for such *Loss* will not exceed the largest of the applicable limits of insurance.

Issuing Company:  TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Policy Number:  ZPL-71N49757-22-I3

CYB-19138 Ed. 06-20
© 2020 The Travelers Indemnity Company. All rights reserved.

TRAVELERS DOC MGMT Page 42 of 48

This endorsement changes the CyberRisk
Coverage.

**Exclude Mental Anguish Endorsement**

For the Technology Errors And Omissions Insuring Agreement, **Exclusions, Bodily Injury,** 2b is
deleted.

Issuing Company:  TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Policy Number:  ZPL-71N49757-22-I3

CYB-19149 Ed. 06-20

Page 1 of 1

© 2020 The Travelers Indemnity Company. All rights reserved.

There are two changes described below:

1. **Definitions**, *Subsidiary*, 3 is deleted.

2. The following is added to **Definitions**, *Subsidiary*:

   Does not include any Joint Venture or Limited Liability Partnership (LLP), unless such Joint Venture or LLP is included in the schedule below.

<u>Scheduled Joint Venture Or LLP</u>

Issuing Company: TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Policy Number: ZPL-71N49757-22-I3

© 2020 The Travelers Indemnity Company. All rights reserved.



**TRAVELERS**
DBS - 033 71N49757 ZPL   220404
P.O. BOX 2961
HARTFORD, CT 06104-2961

INTERNATIONAL CONTROL SERVICES
606 W. IMBODEN DR
DECATUR IL  62521

**YOUR INSURANCE POLICY IS SUBJECT TO CANCELLATION.   PLEASE
SEE REVERSE SIDE FOR NOTICE OF CANCELLATION.**

CLDBNOC



# TRAVELERS

## NOTICE OF CANCELLATION
## FOR NON-PAYMENT OF PREMIUM

**Insuring Company:** TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Professional Liab

**POLICY NO.** 71N49757 ZPL
**Issue Date** 05/23/22
**ACCOUNT** 7166R0092

**Page 2 of 3**

| | |
|---|---|
| **Named Insured and Mailing Address** | INTERNATIONAL CONTROL SERVICES<br>606 W. IMBODEN DR<br>DECATUR IL 62521 |

**Agent** A J GALLAGHER RMS

**Please contact your agent if you have any questions.**
**PHONE:** (217) 423-2345

## EFFECTIVE DATE OF CANCELLATION:     JUNE 12, 2022

We are pleased to have you as a customer and would like to continue to provide your insurance. Unfortunately, we have not received the premium payment due on this policy. Therefore, your policy shown on this notice will be cancelled on the effective date of cancellation shown above, at the time the policy became effective. We will refund any premium due you. We regret having to take this action, and will be pleased to rescind the cancellation if we receive the minimum due on/before the effective date of cancellation. In that event, we will send you a notice of reinstatement continuing your coverage.

| Premium Information |
|---|

| POLICY NUMBER 71N49757 ZPL | | POLICY PERIOD 04/04/22 To 04/04/23 | |
|---|---|---|---|
| Previous balance | $22,193.00 | **Pay** | **MINIMUM DUE** $9,246.43 |
| | | **Either** | |
| | | **Amount** | **TOTAL DUE** $22,193.00 |
| | | **By** | **DUE DATE** JUNE 12, 2022 |

If you wish to reinstate your policy, you must pay the MINIMUM DUE by the effective date of cancellation at 12:01 am. The MINIMUM DUE shown above includes:

$7,396.92 was due on 05/10/22;
$1,849.51 that is due on 06/12/22.

*Please detach the return stub and mail with your payment in the enclosed envelope to:*
TRAVELERS CL REMITTANCE CENTER, PO BOX 660317, DALLAS, TX 75266-0317.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

648844J   2022143   0254   033   0HE277

## Payment Coupon   *Make checks payable to:* TRAVELERS

A J GALLAGHER RMS
INTERNATIONAL CONTROL SERVICES

7166R0092     71N49757 ZPL

Include Account Number on the check.

Change of Address?
Place an "X" here.
Print changes on reverse side.

| TOTAL BALANCE |
|---|
| $22,193.00 |

**PAYMENT MUST BE RECEIVED BY**
JUNE 12, 2022

TRAVELERS CL REMITTANCE CENTER
PO BOX 660317
DALLAS, TX 75266-0317

| MINIMUM DUE |
|---|
| $9,246.43 |

| AMOUNT ENCLOSED |
|---|
| |

9937313636183030393240393939392700092464300221930085



The policy number shown above consists of your CL policy number and policy form. For the complete policy number refer to your policy paper.

This bill is rendered by The Travelers                affiliated company indicated on the policy shown on this notice.

A late charge has been assessed on your account because we have not received your previous minimum due. This account level charge is listed on another notice that is being issued and mailed to you today.

If you are paying with a check from a Personal Checking Account, you authorize us to either use information from your check to make a one-time electronic funds transfer from your account or to process the payment as a check. If you are paying with a check from a Business Checking account, we will process the payment as a check.

************************************* QUESTIONS? *************************************

If you have any questions about this statement, please contact your Agent, Travelers Billing Customer Service or the Travelers on-line Telephone Inquiry Service. To reach the Travelers Billing Customer Service or the Telephone Inquiry dial 1-800-252-2268 and follow the instructions.
Your 9 character billing account number is: --- 7166R0092.

648844J    2022143    0254    033 0HE277



**TRAVELERS**
A J GALLAGHER RMS
PO BOX 140
DECATUR IL 62525

**Date of this Notice**      06/07/22
**Account No.**    7166R0092

INTERNATIONAL CONTROL SERVICES
606 W. IMBODEN DR
DECATUR IL 62521

Please contact your agent
with any questions, future
policy changes and all
address changes.

**A J GALLAGHER RMS**
**(217) 423-2345**

**Insuring Company: TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA**

---

# REINSTATEMENT NOTICE

We are pleased to tell you that your policy has been reinstated.

| POLICYHOLDER | POLICY IDENTIFICATION NUMBER |
|---|---|
| **INTERNATIONAL CONTROL SERVICES** | **71N49757 ZPL** |
| TYPE OF INSURANCE | POLICY PERIOD |
| **Professional Liab** | **04/04/22 To 04/04/23** |

Receipt of funds dishonored upon presentment is not a valid means of
reinstatement.  Reinstatement will only occur when all conditions have
been met.  If these conditions have not been met the reinstatement will
be null and void.

We understand that circumstances will occasionally cause a payment to
arrive late, but please be aware that if future payments don't reach us
on time, WE MAY REQUIRE FULL PAYMENT OF THE OUTSTANDING BALANCE ON YOUR
POLICY.  Please contact your Travelers            representative if you
have any questions concerning this notice. Thank you for your business.

648826R     2022158     0264     033 OHE277